## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAMEROON WHITERU, *Individually and as Personal Representative of the Estate of Okiemute C. Whiteru, et ux.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 15-cv-0844 (KBJ) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) | |
| Defendant. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

On October 19, 2013, Okiemute Whiteru ("Whiteru") suffered an accidental injury inside the Judiciary Square Metro Station that resulted in his death. His body was discovered under a platform in the Metro Station on October 23, 2013. Whiteru's parents, Cameroon and Agnes Whiteru (collectively, "Plaintiffs"), have brought the instant action against Defendant Washington Metropolitan Area Transit Authority ("WMATA"); they seek monetary damages and make three legal claims about WMATA's liability for alleged negligence. Plaintiffs' assert, first, that WMATA acted negligently under the common law of the District of Columbia when it failed to discover Whiteru in time to provide him with life-saving emergency medical assistance (*See also* Am. Compl., ECF No. 21, ¶¶ 23–30 (Count I).) They also maintain that they are entitled to survivor's damages due to WMATA's negligence under D.C. Code § 12-101 (*see id.* ¶¶ 31–34 (Count II)), and that WMATA's negligence caused Whiteru's wrongful death for the purpose of D.C. Code § 16-2701 (*see id.* ¶¶ 35–36 (Count III)).

This Court previously denied WMATA's motion for summary judgment with respect to these claims, on the grounds that WMATA was not entitled to sovereign immunity, and that Plaintiffs had offered sufficient evidence such that a reasonable jury could find that WMATA breached its duty of care to Whiteru.  *See Whiteru v. WMATA*, 258 F. Supp. 3d 175, 178 (D.D.C. 2017).  The Court then authorized additional expert discovery concerning the national standard of care for inspections of metropolitan subway systems, at Plaintiffs' request (*see* May 4, 2018, Hr'g Tr., ECF No. 68, at 40:8, 42:2–10), and allowed WMATA to submit supplemental summary judgment briefing, as necessary to permit WMATA to raise the defense of contributory negligence, *see Whiteru v. WMATA*, No. 15-CV-0844 (KBJ), 2018 WL 6605427, at *1 (D.D.C. Dec. 17, 2018).

Before this Court at present is WMATA's supplemental motion for summary judgment under Federal Rule of Civil Procedure 56.  (*See* Def.'s Suppl. Mot. for Summ. J. ("Def.'s Suppl. Mot."), ECF No. 80, at 1.)[1]  In support of this motion, WMATA argues that Whiteru's contributory negligence is a complete bar to Plaintiffs' recovery with respect to any of their tort claims.  (*See id.* at 8.)  In opposition to WMATA's motion, Plaintiffs argue that WMATA cannot assert a defense of contributory negligence, as a common carrier, because WMATA had an affirmative duty to render aid to an injured passenger such as Whiteru, regardless of that passenger's own

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

negligence.  (*See* Pls.' Opp'n to Def.'s Suppl. Mot. for Summ. J. ("Pls.' Opp'n"), ECF No. 82, at 4.)

For the reasons explained fully below, this Court finds that Whiteru was contributorily negligent as a matter of law, and that, as a result, Plaintiffs' recovery is completely barred under District of Columbia law, despite WMATA's status as a common carrier.  Accordingly, WMATA's supplemental motion for summary judgment will be **GRANTED**, and summary judgment will be entered in WMATA's favor.  A separate Order consistent with this Memorandum Opinion shall follow.

## I.      BACKGROUND

### A.      The Facts Pertaining To Whiteru's Fall

The facts that have given rise to the negligence claims at issue in this case are detailed fully in this Court's prior summary judgment opinion.  *See Whiteru*, 258 F. Supp. 3d at 178–79.  What follows are the undisputed facts that are relevant to the issue of Whiteru's alleged contributory negligence.

Whiteru disembarked a WMATA Metro train at the Judiciary Square Metro Station at approximately 12:45 a.m. on Saturday, October 19, 2013.  (*See* Pls.' Resp. to Def.'s Statement of Material Facts ("Pls.' Material Facts"), ECF No. 30, at 3–4.)  After he exited the train, he walked up the escalator steps (which were in stationary mode) from the platform to the mezzanine level of the station.  (*See id.* at 4.)  Video footage from a surveillance camera inside the station documents this conduct (*see* Video of Incident (WMATA 2013) ("Video"), at 1:28–50), and Whiteru does not appear on camera again until approximately twenty-two minutes later.

Whether or not Whiteru left the Judiciary Square Metro Station entirely before he returned to the train platform is disputed.  (*Compare* Pls.' Material Facts at 4, *with* Def.'s Reply to Pls.' Material Facts ("Def.'s Reply re: Material Facts"), ECF No. 31, at 3.)  However, there is no dispute that Whiteru exited the "paid area" of the Metro Station at 12:48 a.m., and that at 1:07 a.m., he approached the information kiosk on the mezzanine level of the Judiciary Square station and spoke to Rhonda Brown, the station manager on duty, who then helped Whiteru pass through the turnstile to re-enter the paid area of the station.  (Aff. of William Martin, Ex. 1 to Def.'s Reply re: Material Facts, ECF No. 31-1, at 2–3.)

At that point, Whiteru's conduct is captured on video tape once again; he walked back down the stationary escalator steps, stumbled on the last few stairs and landed prostrate on the platform.  (*See* Video at 23:50–24:01.)  Whiteru lay on his back at the base of the escalator for a full three-and-a-half minutes before he pushed himself up to his feet.  (*See id.* at 24:01–27:24.)  Whiteru then reached for the parapet wall that is adjacent to the base of the escalator and pulled himself up to lean against it.  (*See id.* at 27:24–28.)[2]  Forty-five seconds after Whiteru first leaned against the parapet wall, he appears to turn his body in an attempt to sit on the wall.  (*See* Video at 28:14–16.)  The footage shows Whiteru unable to catch his balance, and ten seconds after first attempting to sit, Whiteru falls head first over the parapet and into the gap between the parapet and the station wall.  (*See id.* at 28:16–26.)[3]  There is no surveillance video

---

[2] The parapet is a protective wall that runs along the outside edge of the platform where passengers wait for Metro trains to arrive.  (*See* Pls.' Material Facts at 5.)  There is a 53-inch gap between the edge of the platform that the parapet wall borders and the station wall.  (*See* Investigative Report of Brian L. Mills, Ex. 7 to Pls.' Opp'n, ECF No. 28-7, at 14.)

[3] The parties dispute whether Whiteru merely leaned on the wall or attempted to sit on it.  (*Compare* Pls.' Add'l Statement of Material Facts, ECF No 82-2, at ¶ 11, *with* Def.'s Reply to Pls.' Opp'n to

footage of Whiteru after the fall, and no surveillance video of the platform and/or the subsequent station-manager inspections is available.[4]

The station manager on duty that night, Rhonda Brown, was supposed to have inspected the station platform three times after Whiteru's fall—at 1:30 a.m., 2:30 a.m., and 3:15 a.m. (*See* Pls' Material Facts at 10–11.)  Brown has no independent memory of conducting those particular inspections (*see* Pls.' Material Facts at 10); however, she signed the station-manager checklist that night, indicating that she had completed these inspections (*see* Station Manager Hourly Checklist, Ex. to Def.'s Mot for Summ. J., ECF No. 27-3, at 2).  Ultimately, Whiteru's body was not discovered until more than four and a half days later, by an anonymous Metro passenger.  (*See* Pls.' Material Facts at 5–6.)  Whiteru had suffered serious injuries due to his fall, including a fracture of his "bony vertebrae at the C-5 level" (Pls.' Material Facts at 5), and he succumbed to those injuries at some point between the fall and his discovery.  The parties dispute how long Whiteru remained alive after the fall, but they agree that Whiteru would have survived his injuries if he had been discovered within 15 minutes of the fall, i.e., at or before approximately 1:30 a.m.  (*See id.*; Def.'s Reply re: Material Facts at 16.)

---

Def.'s Mot. for Summ. J. ("Def.'s Reply"), ECF No. 83, at 5, 6; *see also* May 16, 2019, Hr'g Tr. at 24:5–8.)  Regardless, the video shows that Whiteru engaged with the wall in a manner which caused him to lose his balance and fall into the gap between the parapet wall and the outer wall of the station. (*See* Video at 28:16–28:26.)

[4] The parties dispute whether surveillance footage of the platform in the hours after Whiteru's fall exists.  (*Compare* Pls.' Material Facts at 11–12 (claiming as an undisputed fact that there is "no surveillance video evidence" of the station manager's inspections at 1:30 a.m., 2:30 a.m., and 3:15 a.m.), *with* Def.'s Reply re: Material Facts at 13–14 (disputing the contention that no such evidence exists, but stating that "[t]here is no video imaging that was retrieved after Mr. Whiteru's fall over the concrete wall").)

### B.  Procedural History

Plaintiffs filed the instant negligence action against WMATA on May 1, 2015, in D.C. Superior Court, and it was removed to this Court on June 8, 2015.  (*See* Notice of Removal, ECF No. 1, at 1.)  On July 7, 2017, the Court denied WMATA's first motion for summary judgment, *see Whiteru*, 258 F. Supp. 3d at 178, and the Court subsequently scheduled an initial pretrial conference and set a trial date (s*ee* Minute Entry of Dec. 21, 2017).  During the initial pretrial conference, held on May 4, 2018, the Court granted Plaintiffs' motion to reopen expert discovery and vacated the trial date as a result.  (*See* Minute Entry of May 4, 2018.)  Thereafter, WMATA retained a new counsel of record, who subsequently moved to file a supplemental motion for summary judgment to raise the defense of contributory negligence.  (*See* Def.'s Mem. in Supp. of Def.'s Mot. for Leave to File, ECF No. 71-1, at 2–3.)  This Court granted leave for this supplemental filing on December 6, 2018. (*See* Order Granting Def.'s Mot. for Leave to File Suppl. Mot. for Summ. J., ECF No. 77.)

WMATA's supplemental motion for summary judgment contends that judgment must be entered in its favor because Whiteru's public intoxication in violation of section 25-1001(c) of the D.C. Code constituted contributory negligence *per se* (*see* Def.'s Suppl. Mot. at 9, 13–14), and also because Whiteru was contributorily negligent as a matter of law (*see id.* at 14).  Plaintiffs filed an opposition brief on January 11, 2019 (*see* Pls.' Opp'n), arguing that, as a common carrier, WMATA has an affirmative duty to render aid, and that WMATA had breached that duty after any contributory negligence on Whiteru's part occurred such that recovery was not precluded (*see id.* at 4).  WMATA filed a reply brief on January 25, 2019 (*see* Def.'s Reply to Pls.' Opp'n to Def.'s Mot. for Summ. J., ECF No. 83), and the parties appeared before this Court for a

hearing on the ripe supplemental summary judgment motion on May 16, 2019. (*See* Minute Entry of May 16, 2019.)

## II.   LEGAL STANDARDS

### A.   Motions for Summary Judgment Under Rule 56

To succeed on a motion for summary judgment, the moving party must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). And "[a] fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

At the summary-judgment stage of litigation, this Court's role is strictly limited to the determination of "whether there is a genuine dispute for trial[,]" and the Court must not assess credibility or weigh evidence. *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the Court need not accept conclusory assertions that the record evidence does not support. *See Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S.*

*Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [video evidence in] the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B.      Contributory Negligence Under District Of Columbia Law**

"Because this is a diversity case, the substantive tort law of the District of Columbia controls." *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998) (citing *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 553 (D.C. Cir. 1993)). Under District of Columbia law, a plaintiff who claims entitlement to damages for harm caused by the defendant's negligence must demonstrate: (1) the defendant's duty to the plaintiff; (2) a breach of that duty; and (3) harm to the plaintiff, proximately caused by defendant's breach. *See Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009). However, even when a plaintiff can establish a defendant's negligence, "[t]he District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a *complete* defense to the defendant's liability for negligence." *Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972, 985 (D.C. 2000) (emphasis added).

"Contributory negligence is 'conduct which falls below the standard to which a plaintiff should conform for his own protection.'" *WMATA v. Cross*, 849 A.2d 1021, 1024 (D.C. 2004) (quoting *Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980)). Thus, a plaintiff is contributorily negligent when he "fail[s] 'to act with the prudence of an ordinary reasonable person under the circumstances.'" *Queen v. WMATA*, 842 F.2d

476, 479 (D.C. Cir. 1988) (citing *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985)).  Moreover, a plaintiff's conduct may meet the "higher standard" of contributory negligence *per se*, which raises "a rebuttable presumption of negligence where a party violates a statute and the violation is a proximate cause of an injury that the statute was designed to prevent." *Blake v. Securitas Sec. Servs., Inc.*, 962 F. Supp. 2d 141, 146 (D.D.C. 2013) (quoting *Marshall v. D.C. Caribbean Carnival, Inc.*, No. 02–1298, 2004 WL 3257066, at *8 (D.D.C. Oct. 26, 2004)); (*cf.* Def.'s Suppl. Mot. at 9, 13–14 (arguing that Whiteru violated the District's public intoxication statute, D.C. Code § 25-1001(c))).  As such, to prevail on a defense of contributory negligence *per se*, a defendant must show "a causal link" between the plaintiff's violation of a statute and the plaintiff's injury. *Caribbean Carnival*, 2004 WL 3257066, at *8.

"Issues of contributory negligence, like issues of negligence, present factual questions for the trier of fact unless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion." *Lyons v. Barrazotto*, 667 A.2d 314, 322 (D.C. 1995) (citations, alteration, and internal quotation marks omitted).  Because contributory negligence is an affirmative defense, it is the defendant's burden "to establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care." *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997).   And, the court can determine the issue of contributory negligence as a matter of law if "only one conclusion may be drawn" from the undisputed facts. *Blake*, 962 F. Supp. 2d at 146 (quoting *WMATA v. Jones,* 443 A.2d 45, 50 (D.C.1982)).  Courts may also decline to reach any *per se* negligence arguments if they conclude that the plaintiff was contributorily negligent as a matter of law. *See id.*

Importantly, because contributory negligence is a complete defense in the District of Columbia, a "plaintiff is barred from recovery if his negligence was a substantial factor in causing his injury, even if the defendant was also negligent, as long as the plaintiff's negligence contributed in some degree to his injury." *Sinai v. Polinger Co.*, 498 A.2d 520, 528 (D.C. 1985) (internal quotation marks and citation omitted)).

## III.    ANALYSIS

It is undisputed that Whiteru was heavily intoxicated when he entered the Judiciary Square Metro Station in the early morning hours of October 19, 2013, and that it was his own engagement with the station's parapet wall that caused him to fall "head over feet" over the wall, and which ultimately resulted in his untimely death.  Thus, as explained below, there is no genuine issue of material fact concerning Whiteru's contributory negligence, as a matter of law.  Moreover, and consequently, Plaintiffs are completely barred from any recovery pursuant to the law of the District of Columbia. This unfortunate result stems from the fact that WMATA is entitled to assert contributory negligence as a complete defense, and the Court finds unpersuasive Plaintiffs' contention that WMATA's alleged negligent failure to render aid to Whiteru (as a common carrier must) is an intervening act that broke the chain of causation between Whiteru's own negligence and his fatal injuries.

### A.    Whiteru's Own Conduct Was Negligent, And His Negligence Was The Proximate Cause Of His Death

"It is well settled in [the District of Columbia] that negligence and contributory negligence are usually questions of fact and become questions of law only where there

is but one reasonable inference which may be drawn from undisputed facts." *District of Columbia v. Brown*, 589 A.2d 384, 388 (D.C. 1991) (quoting *Aqui v. Isaac*, 342 A.2d 370, 371–72 (D.C. 1975)).  For example, cases involving complicated interactions between multiple parties—like multi-vehicle crashes at intersections—can rarely be determined as a matter of law at summary judgment.  *See Mahnke v. WMATA*, 821 F. Supp. 2d 125, 133 (D.D.C. 2011).  However, it is also well established that courts *can* find contributory negligence as a matter of law where the undisputed facts are clear.  *See, e.g.*, *Krombein v. Gali Serv. Indus., Inc.*, 317 F. Supp. 2d 14, 19–20 (D.D.C. 2004) (finding plaintiff was contributorily negligent as a matter of law when she slipped after deliberately walking on a wet floor); *see id.* at 19 (noting that the mere assertion that a jury should determine contributory negligence was not enough to avoid summary judgment, because "conclusory declarations . . . do not amount to specific facts that would lead a reasonable jury to find in [plaintiff's] favor"); *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 329 (D.C. 2010) (finding plaintiff was contributorily negligent as a matter of law when she attempted to get out of an elevator that had stalled between floors and fell to her death).

Two cases from the District of Columbia Court of Appeals dispel all doubts about this point.  In *Fells v. WMATA*, the court found that an elderly bus-passenger was contributorily negligent as a matter of law, where she attempted to change her seat while the bus was in motion and suffered an injury after the bus made an abrupt stop.  *See* 357 A.2d 395, 396 (D.C. 1976).  The *Fells* court determined that the passenger's act of changing seats while the bus was moving was the proximate cause of her injuries and that, by choosing to change seats at the time she did, she had failed to exercise ordinary

11

and reasonable care, particularly where she knew (or should have known) that it was dangerous to change seats while a bus is moving.  *See Fells,* 357 A.2d at 395–96.

*WMATA v. Cross* also involved an elderly bus-passenger who suffered an injury after an abrupt bus stop.  *See* 849 A.2d 1021 (D.C. 2004).  In that case, the bus driver testified that the plaintiff had been in the process of moving between seats at the time of the abrupt stop and ensuing injury, while the plaintiff testified that she had not yet taken a seat after boarding the bus.  *See id.* at 1023.  The court in *Cross* determined that there was sufficient evidence presented for a jury to find that the plaintiff was negligent, and thus, that the law of contributory negligence applied.  *See id.* at 1024. The court then remanded the case for retrial, finding that the trial court's failure to instruct the jury on contributory negligence was reversible error.  *See id.* at 1025.

*Fells* and *Cross* provide helpful juxtaposition of the circumstances under which contributory negligence can be found as a matter of law.  In *Fells*, the court determined that the undisputed facts were clear, and therefore, as a matter of law, the plaintiff was negligent when she changed seats.  *See Fells*, 357 A.2d at 396.  But, in *Cross,* the court returned the case to a jury to determine whether the plaintiff was contributorily negligent, concluding that a jury could credit the testimony of either the plaintiff or the bus driver.  *See Cross*, 849 A.2d at 1025; *see also, e.g.*, *Boff v. Inter-Continental Hotels Corp.*, 2018 WL 6329451 at *5–6 (D.D.C. 2018) (declining to find contributory negligence when it was unclear whether the plaintiff was running before she slipped and fell on a wet sidewalk during a rainstorm); *Stehn v. Cody*, 962 F. Supp. 2d 175, 179 (D.D.C. 2013) (declining to grant plaintiff's motion for summary judgment when "[a] genuine issue of material fact remains as to whether Plaintiff left the sidewalk when she

was permitted to do so" before being struck in a crosswalk); *Lynn v. District of Columbia*, 734 A.2d 168, 172–73 (D.C. 1999) (reversing summary judgment due to plaintiff's contributory negligence where there were disputed facts about the availability of an alternative, safer route after the plaintiff fell while walking on a sidewalk in deteriorated condition).

The state of the evidence in the instant case makes WMATA's contributory negligence contention more like the one in *Fells*, because there is video footage that clearly establishes Whiteru's own negligent conduct.  The parties dispute whether Whiteru *sat* on the parapet wall, or merely *leaned* against it (*see supra* n. 3), but regardless, the video clearly shows that Whiteru engaged with the wall voluntarily, and in an unreasonable manner, and that it was this engagement that caused him to fall over the wall.  (*See* Video at 28:14–26.)  Simply standing up on a moving bus—something that regularly occurs on public transportation—was deemed sufficient to support a contributory negligence defense in *Fells* and *Cross*.  And given the extraordinary movements that were necessary for Whiteru to tumble "head over feet" over the wall, a similar finding is inescapable here.  Moreover, leaning on such a low wall is especially negligent when one is heavily intoxicated—i.e., it is conduct that falls far below the standard to which a reasonable person "should conform for his own protection.'" *Cross*, 849 A.2d at 1024 (quoting *Scoggins*, 419 A.2d at 1004).

Plaintiffs have not pointed to any specific facts that undermine this conclusion. Instead, they merely state—with no support—that a jury *might* find that Whiteru was *not* negligent.  (*See* May 16, 2019, Hr'g Tr. ("May 16 Hr'g Tr.") at 36:17–37:4.) However, it is clear beyond cavil that just asserting that a jury *could* conclude the

opposite of what the record evidence plainly demonstrates is not sufficient to establish that there is a genuine issue of material fact.  *See, e.g.*, *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) ("A party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' supporting his position[.]").  And the facts that Plaintiffs highlight to counter the absence of a genuine dispute regarding Whiteru's negligence do no such thing.  For example, Plaintiffs insist that the issue of whether or not Whiteru's *intoxication* caused his fall is vigorously disputed.  (*See* May 16 Hr'g Tr. at 23:3–5.)  Yet, an alleged causal connection between a tort victim's intoxication and the conduct that precipitates his injury is only relevant in the context of determining whether the conduct at issue qualifies as negligence *per se*.  *See Blake*, 962 F. Supp. 2d at 146 (explaining that contributory negligence *per se* considers whether the plaintiff's violation of a statute "is a proximate cause of an injury that the statute was designed to prevent").  What matters for present purposes is the far more mundane evaluation of whether Whiteru's conduct with respect to the parapet wall was negligent at all, and whether that negligence was the proximate cause of his injury, neither of which can reasonably be disputed on the present facts.  *See, e.g.*, *Norwood v. Marrocco*, 586 F. Supp. 101, 102 (D.D.C. 1984), *aff'd*, 780 F.2d 110 (D.C. Cir. 1986) (finding that "[n]o reasonable jury could fail to conclude that [plaintiff's] own intoxication and actions . . . were a proximate cause of plaintiff's injuries[,]" because "[a] reasonable person using ordinary care would not become intoxicated and then" engage in high-risk conduct); (*see also* May 16 Hr'g Tr. at 24:7–15 (counsel responding affirmatively when asked whether Plaintiffs concede that Whiteru was drunk and that he leaned on and fell backwards over the parapet wall)).

14

**B.    The Defense Of Contributory Negligence Completely Bars Plaintiffs'
Recovery Notwithstanding The Fact That WMATA Has A Common
Carrier's Duty To Aid Its Passengers**

Undaunted, Plaintiffs insist that, because Whiteru's own negligence preceded

WMATA's breach of the common carrier's duty to render aid, contributory negligence

does not preclude WMATA's liability.  In essence, Plaintiffs suggest that Whiteru's

own negligence should not be deemed the proximate cause of his injury and death,

because WMATA's duty to render aid arose and was an intervening (non)event (as if

the causation clock stopped at the moment of the fall and restarted after Whiteru landed

under the platform).  (*See* Pl.'s Opp'n at 6–7.)  But Whiteru's negligence caused the fall

that plainly precipitated his injury, and the D.C. Court of Appeals has long made clear

that, if passengers are injured due to their own negligence, the defense of contributory

negligence is available to common carriers, including WMATA, such that liability is

precluded for the carrier's alleged breach of the duty of care.  *See, e.g.*, *Cross*, 849 A.2d

at 1024 (reversing and remanding for a new trial with a contributory negligence

instruction when there was evidence that an elderly passenger left her seat while the bus

was moving, which caused her to be injured when the bus stopped suddenly); *Fells*, 357

A.2d at 396 (affirming directed verdict for defendant on similar facts because the

elderly passenger "knew or should have know that it would be dangerous to change

seats under all the circumstances" (footnote omitted)).[5]  In fact, the application of the

---

[5] *See also Reeves v. WMATA*, 135 A.3d 807, 811 n.7 (D.C. 2016) (implicitly acknowledging contributory negligence in the context of a passenger slip and fall case, but declining to address the issue because it was not the basis of the trial court's ruling); *WMATA v. Johnson*, 726 A.2d 172, 175 (D.C. 1999) (considering the application of the last clear chance doctrine to overcome the defense of contributory negligence after "[t]he trial court instructed the jury that [a suicidal WMATA passenger] was contributorily negligent as a matter of law" when she threw herself in front of the train); *WMATA v. Jeanty*, 718 A.2d 172, 176, 176 n.9 (D.C. 1998) (affirming that contributory negligence applies to common carriers, including WMATA, in a case where a jury "expressly found that [a WMATA bus passenger] was not contributorily negligent"); *Weston v. WMATA*, 78 F.3d 682, 687 n.10 (D.C. Cir.

contributory negligence defense to the common carrier/passenger context is so commonplace that the D.C. courts have formulated a pattern jury instruction with respect to this scenario, to wit—

> The requirement that [a common carrier] exercise ordinary care for a passenger's safety does not relieve the passenger of the duty to exercise ordinary care for [his] own safety.  If a passenger fails to exercise ordinary care for [his] own safety and that failure is the proximate cause of the passenger's injury, then [the common carrier] is not liable for the passenger's injury.

D.C. Std. Civ. Jury Instr. No. 8-11.

Thus, Plaintiffs' argument that "contributory negligence is not an available defense" because, as a common carrier, WMATA had a duty to render aid to Whiteru after he fell over the parapet wall and injured himself (*see* Pls.' Opp'n at 4, 5–8) finds no support in the established law of the District of Columbia.  Indeed, the only authority that Plaintiffs rely on to support this proposition is Section 314 of the Restatement (Second) of Torts, which states generally that "[a] common carrier is under a duty to its passengers to take reasonable action . . . to give them first aid after it knows or has reason to know that they are ill or injured and to care for them until they can be cared for by others."  (*See id.* at 5 (quoting Restatement (Second) of Torts § 314A (1965)).)  According to Plaintiffs, this Restatement provision contemplates that such a duty "arises and exists *even if* [Whiteru's] 'illness or injury [wa]s due to' his own 'negligence.'"  (*Id.* at 6 (quoting Restatement (Second) of Torts § 314A cmt. d.)

---

1996) (noting that contributory negligence defense could have been available to WMATA where a two-year-old passenger's hand was injured in an escalator, but WMATA presented no evidence in support of that defense); *Wainwright v. WMATA*, 903 F. Supp. 133, 136–37 (D.D.C. 1995) (considering contributory negligence argument at summary judgment when WMATA passenger was injured on an escalator).

(last alteration in original).)  That may be so, but, there is a significant and substantial difference between a defendant's breach of an existing legal duty and the plaintiff's ability to claim that the defendant *should be held liable* for that breach.  (*See, e.g.*, May 16 Hr'g Tr. at 21:15–23:22.)  And, properly understood, the defense of "[c]ontributory negligence does not deny the negligence of the defendant but merely precludes recovery to a plaintiff who, in effect, failed to take due care for his own well-being."  *Martin v. George Hyman Const. Co.*, 395 A.2d 63, 69 (D.C. 1978).

In this regard, the D.C. Circuit's opinion in *Andrews v. Wilkins*, 934 F.2d 1267 (D.C. Cir. 1991), is instructive.  In *Andrews*, an officer with the U.S. Park Police approached an intoxicated man, Gino Andrews, who was urinating on the side of a building.  *See Andrews*, 934 F.2d at 1268.  After being threatened with arrest, Andrews fled and eventually jumped into the Washington Channel.  *See id.* at 1268–69.  He swam thirty to forty feet into the Channel before tiring and beginning to drown, *see id.*, and the Park Police officers then launched a less-than-robust series of rescue efforts, including attempting to throw a life ring to Andrews "without apparent urgency[,]" *id.* The police did not jump in after Andrews, and they actually prevented a private boat owner from getting into the water to save him.  *Id.*  After Andrews drowned, his parents brought constitutional and common law tort claims for the wrongful death of their son. *See id.* at 1268.  The federal district court granted summary judgment for the various defendants on both the constitutional and common law tort claims, and with respect to the common law negligence claims in particular, the D.C. Circuit affirmed, holding that Andrews had been contributorily negligent—he was intoxicated, had fled from the police, and voluntarily swam into the Channel—and this negligence was a complete bar

to the plaintiffs' recovery, even if the police had subsequently breached a duty to act reasonably with respect to the rescue efforts they had attempted. *See id.* at 1272 (affirming the district court's contributory negligence finding without resolving whether the Park Police officers breached any duty to rescue non-negligibly). Thus, *Andrews* stands for the basic proposition that if a plaintiff's contributory negligence is the proximate cause of his injury, recovery is completely barred under District of Columbia law, even when the defendant breaches a duty of care that arises after the plaintiff's negligent conduct.

This all means that, regardless of whether WMATA actually breached a duty to render aid to Whiteru after he fell, it was the fall that was the proximate cause of Whiteru's death, and Whiteru's family cannot recover damages for WMATA's intervening breach precisely because Whiteru contributed to his own injury by negligently falling over the parapet wall in the first place. *See Whiteru*, 2018 WL 6605427, at *4 (clarifying that this Court's prior summary judgment opinion does not address the issue of contributory negligence, i.e., whether liability attaches, but instead "merely references caselaw that suggests that the contributory negligence of a passenger on a common carrier does not erase the common carrier's duty to render assistance").[6] Plaintiffs have not pointed to any authority that suggests that an

---

[6] The structure of the Restatement underscores the distinction between duty and liability, insofar as one of the sections of the Restatement of Torts to which Plaintiffs cite is devoted to "Duties of Affirmative Action." *See* Restatement (Second) of Torts §§ 314–314B ("Topic 7. Duties of Affirmative Action"). These subchapters discuss when an affirmative duty to aid arises, and also how and when such duty may be breached. *See id.* Notably, this section is distinct from the subsequent chapters of the Restatement that address liability, including a lengthy chapter that is devoted to "Contributory Negligence." *See id.* §§ 463–496. Five subchapters within *that* chapter describe the circumstances when a plaintiff can recover notwithstanding their contributory negligence, *see id.* §§ 479–484 ("Topic 3. When No Bar to Action"), and none of those circumstances is related to whether or not a defendant has a duty to render aid. *See id.*

affirmative duty to render aid creates *an exception* to the contributory negligence regime that the District of Columbia has chosen to apply as a bar to recovery in tort actions.  And as far as this Court can tell, the D.C. Court of Appeals has identified only one exception to the application of contributory negligence doctrine to bar liability: the last clear chance doctrine, which allows a plaintiff whose own negligence has contributed to the injury of which he complains to recover nonetheless if, among other things, "the defendant had a superior opportunity to avoid the accident."  *Fisher v. Latney*, 146 A.3d 88, 93 (D.C. 2016) (internal quotation marks and citation omitted); *see also Sabo v. Breckenridge Lands, Inc.*, 255 F. Supp. 602, 606 (D. Colo. 1966) (explaining, in a case where the jury was instructed on the special relationship between a passenger and ski lift, which the court suggested was a type of common carrier, that the two circumstances where a plaintiff's contributory negligence is not a substantial factor in his injury involve the last clear chance doctrine and "rescue" doctrine, both of which require plaintiff's action to not be a proximate cause of injury).  Plaintiffs here acknowledge that WMATA did not cause Whiteru's fall, nor did it have a chance to prevent the fall from occurring; therefore, they concede that the last clear chance exception does not apply under the circumstances presented here.  (*See* May 16 Hr'g Tr. at 48:4–5 ("[W]e're not making a claim of last clear chance doctrine because it doesn't apply here.").)

Nor do general policy concerns buoy Plaintiffs' arguments that the contributory negligence doctrine does not preclude liability with respect to common carriers. Indeed, to the contrary, holding that WMATA's affirmative duty to render aid limits the application of contributory negligence appears to subvert the District of Columbia's tort

law scheme, insofar as a common carrier would thereby incur the same liability to the negligent passenger as it would have to the passenger who exercised care for his or her own protection—i.e., precisely the situation that the contributory negligence policy flatly rejects.  Moreover, Plaintiffs' purported concern that applying the law of contributory negligence disincentivizes WMATA from affirmatively rendering aid to its passengers (*see* May 16 Hr'g Tr. at 27:19–23) seems overblown.  WMATA continues to have such an affirmative duty; this Court's holding means only that WMATA may not be held *liable* for every breach of that duty.  And WMATA remains incentivized to aid all passengers regardless, because it will not know *ex ante*, at the moment in which the duty to aid arises, whether a Court will eventually find that the passenger's negligence was the proximate cause of his injury.

In short, Plaintiffs' argument that contributory negligence does not bar liability if the defendant has a duty to render aid after the victim's own negligent conduct finds no support either in District of Columbia law or in logic.  By statute, the District of Columbia has decided that where a plaintiff's negligence is a substantial factor in his or her injury, such person is barred from recovery even if the defendant was negligent as well, and even if the defendant's negligence is in the form of a failure to come to the plaintiff's rescue (after he has been injured) despite a duty to do so.  *Cf. Andrews*, 934 F.2d at 1272.  In other words, the courts of the District have upheld the propriety of contributory negligence even where the defendant is a common carrier; thus, even where a passenger and common carrier have a special relationship imbued with certain heightened duties, the law of contributory negligence still applies.

## IV.   CONCLUSION

Contributory negligence may well be "antiquated" and "harsh[,]" and commentators often point out that it "has been rejected in a majority" of states. *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1156 (Md. 2013).  But, it is the law of the District of Columbia, and when this Court sits in diversity jurisdiction, it is bound to apply it.  *See Smith*, 135 F.3d at 782.  Under District of Columbia law, the relationship between common carriers and passengers does not abrogate a plaintiff's contributory negligence.  *See, e.g.*, *Cross*, 849 A.2d at 1024.  Nor have Plaintiffs provided any persuasive authority for their assertion that WMATA's duty to aid, alone, qualifies as an intervening event that breaks any chain of causation of a passenger's own negligence.  Instead, the undisputed facts in this case show that Whiteru was negligent, and that his negligence was the proximate cause of his injury.  Consequently, this Court finds that Whiteru was contributorily negligent as a matter of law, and as a result, Plaintiffs are barred from recovery for WMATA's alleged breach of its duty to aid Whiteru.

Thus, as set forth in the accompanying Order, WMATA's supplemental motion for summary judgment will be **GRANTED**.

DATE:  August 14, 2020                     *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge