UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMEROON WHITERU, *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>**Defendant.** | Civil Action No. 15-844 (JEB) |

## MEMORANDUM OPINION

Okiemute Whiteru died in October 2013 when he fell off a parapet wall at the Judiciary Square Metro Station here in Washington. See ECF No. 1-1 at ECF p. 12 (Complaint), ¶¶ 15–18. Injured from the fall, Whiteru was unable to extricate himself from the area between the platform and the station wall. Id., ¶¶ 18–19. His body was discovered four days later. Id., ¶ 20.

Plaintiffs Cameroon and Agnes Whiteru, the decedent's parents and personal representative, filed this lawsuit in May 2015, alleging, among other things, that Defendant Washington Metropolitan Area Transit Authority's negligence led to their son's death. Id. at 1; ¶¶ 3–4. Specifically, Plaintiffs submit that, had WMATA's station manager conducted a proper inspection of the Judiciary Square Metro Station, she would have discovered Okiemute's body in time to render lifesaving aid. Id., ¶¶ 29–35.

With trial set for November, Defendant filed a Motion *in Limine* seeking to prevent two of Plaintiffs' experts from testifying as to the national standard of care that WMATA allegedly breached. See ECF No. 72-1 (Def. Motion *in Limine*). Finding that these experts have articulated a sufficiently specific and supported standard of care, the Court will deny the Motion.

1

**I.      Legal Standard**

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" Graves v. District of Columbia, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)). They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Id. at 10 (quoting Bradley v. Pittsburgh Board of Education, 913 F.2d 1064, 1069 (3d Cir. 1990)). The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

**II.     Analysis**

Defendant submits that the Court should prohibit two of Plaintiffs' experts — Dr. Carl Berkowitz and Duane Martin — from testifying as to the national standard of care that WMATA allegedly breached. See Def. MIL at 7–17. WMATA argues that neither has (1) articulated a sufficiently specific national standard of care nor (2) offered an adequate basis for the standard he has adduced. Id. Because it is Plaintiffs' burden to establish the standard of care, WMATA further asserts that preclusion of this testimony must yield judgment in its favor. Id. at 17.

The parties do not dispute that the Whiterus must present expert testimony to establish a national standard of care in order to succeed on their negligence claims. They focus instead on whether Plaintiffs have successfully done so. Where (as here) such testimony is required, "the expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured." Briggs v. WMATA, 481 F.3d 839, 846 (D.C. Cir. 2007) (quoting Clark v. District of Columbia, 708 A.2d 632, 635 (D.C. 1997)). That standard must be "specific,

2

articulable (and articulated)" and should be related "to the practices in fact generally followed by other comparable . . . facilities or to some standard nationally recognized by such units." Briggs, 481 F.3d at 846 (quoting District of Columbia v. Carmichael, 577 A.2d 312, 315 (D.C. 1990), and Clark, 708 A.2d at 635).  Pursuant to the Supreme Court's direction, trial courts must act as gatekeepers for expert testimony, determining whether it is sufficiently relevant and reliable to be admitted.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 597 (1993).

Plaintiffs have designated two experts to testify to the standard of care that applies to the inspection of metro rail stations.  As both Berkowitz and Martin have more than forty years' experience in the transportation industry, Defendant wisely does not dispute their qualifications. See ECF No. 74 (Pls. Opp.) at 3.  Each, along with Defendant's own expert on the issue, prepared written reports and was deposed.  Id.; see also ECF Nos. 72-4 (Report of Dr. Carl Berkowitz); 72-5 (Report of Duane Martin); 72-6 (Deposition of Dr. Carl Berkowitz); 72-8 (Deposition of Duane Martin).

In his expert report, Berkowitz describes the relevant national standard of care: "[A]ll metro rail transit facilities across the United States, without exception, have a duty and responsibility to perform walk-through inspections of their respective stations regarding mezzanines and platforms," which "shall include all areas where the public may potentially access, as well as the areas where things (packages, luggage, etc.) may be purposefully placed or be left behind."  Berkowitz Rep. at ECF p. 7.  Martin's report indicates substantially the same. He explains that "all metro rail properties in the United States have a duty and responsibility, in accordance with a national standard of care" to conduct "walk-through inspections of platforms and mezzanines," which should encompass "all public areas, elevators, rest rooms, stairways, and stairwells, and all areas of voids or spaces where people or things can hide or be left behind."

Martin Rep. at 3–4.  Both Berkowitz and Martin also testified that the area behind the parapet (where the decedent's body was found) falls within the scope of the inspection required by the national standard of care.  See ECF No. 74-1 (Further Excerpts from Deposition of Dr. Carl Berkowitz) at 105:12–15; 219:8–11; ECF No. 74-2 (Further Excerpts from Deposition of Duane Martin) at 167:1–3.

WMATA first argues that these standards of care are not specific enough because they do not establish a national requirement that station manages inspect the area behind a parapet.  This position holds no water, in part because no other transit station in the country has a parapet area similar to those found in D.C. metro stations.  See Def. MIL at 7–9.  Although caselaw in the D.C. Court of Appeals and this Circuit speaks to "specific" standards of care, it does not require the articulation of a standard that mandates the exact action a defendant allegedly omitted.  See Carmichael, 577 A.2d at 315.  Nor would it make much sense to do so, as that would preclude negligence suits against defendants who operate in unique environments.  Instead, an expert's testimony is adequate when it provides more than a "generalized reference[]" to safety standards such that "the jury will [not] be forced to engage in idle speculation" about typical procedures. Briggs, 481 F.3d at 846–47 (citing District of Columbia v. Moreno, 647 A.2d 396, 400 (D.C. 1994), and Hughes v. District of Columbia, 425 A.2d 1299, 1303 (D.C. 1981)).  In this case, that requires the experts to provide a clear articulation of the national standard of care regarding the scope of typical metro-station inspections that should take place — specifically, whether that scope includes all areas where people or things may be found.  See ECF No. 74-3 (Deposition of Norman Marcus) at 22:25–23:7; 81:8–82:6 (Defendant's expert agreeing that walk-through inspections required).  WMATA may disagree with Plaintiffs' experts' conclusions on that

4

question, but the experts have "clearly articulate[d] and reference[d] a standard of care by which the defendant's actions can be measured." Briggs, 481 F.3d at 846.

Defendant next contends that this standard, even if sufficiently specific, lacks actual evidentiary support. See Def. MIL at 9–17. In particular, WMATA accuses Berkowitz and Martin of omitting citations to the policies of other transit systems, basing their testimony on only their own opinions, and improperly relying on guidance from the American Public Transportation Agency (APTA) and WMATA's own procedures. Id.; see also ECF No. 76 (Def. Reply) at 3–4. It further notes that Berkowitz's testimony has been excluded in other cases for similar reasons. Id. at 13–14, 16. Quickly refuting the last argument first, the Court finds that Berkowitz's prior exclusions are irrelevant to the question of whether he should be permitted to testify before a jury in this case, given that his expert opinions were different there.

The Court also concludes that the experts' bases for their opinions are sufficient. Berkowitz consulted with at least seven other metro systems in the U.S. that conducted regular inspections, several of which inspected "all areas potentially accessible by the public, including areas where people may try to avoid detection or where objects may be placed or left behind." Berkowitz Rep. at ECF pp. 7–8. Martin, too, studied the practices of other metro systems, conducting conversations with officials from at least four other systems about their inspection practices. See Martin Dep. Excerpts at 84:1, 137:11–17, 196:5–16, 210:10–16; 212:17–18. Berkowitz also examined and included in his report the written policies of two of the systems with whom he consulted. See Berkowitz Rep. at ECF pp. 28, 33. The experts have thus done "more than rely on [their] own experience or 'simply . . . declar[e] that the District violated the national standard of care.'" Butera v. District of Columbia, 235 F.3d 637, 659 (D.C. Cir. 2001) (quoting Clark, 708 A.2d at 635). Consultation with nine comparable systems provides

5

"concrete bases," Butera, 235 F.3d at 660, for their opinions.  See Novak v. Capital Management and Development Corp., 570 F.3d 305, 313 (D.C. Cir. 2009) (consultation with four comparable facilities in D.C. sufficient to establish national standard of care).

Finally, the Court sees no problem with the experts' reliance on WMATA's own procedures or the voluntary APTA guidance.  Although "the WMATA manuals alone would be insufficient," they may have some "bearing on the standard of care."  Briggs, 481 F.3d at 848 (citing Clark, 708 A.2d at 636–37) (emphasis omitted).  The same is true of the APTA guidance. See Casey v. Ward, 211 F. Supp. 3d 107, 114–16 (D.D.C. 2016) (citing Varner v. District of Columbia, 891 A.2d 260, 272 (D.C. 2006)).

**III.   Conclusion**

For the foregoing reasons, the Court will deny Defendant's Motion *in Limine* to bar Plaintiffs' experts on the national standard of care.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 23, 2022

6