UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMEROON WHITERU, *et al.*,<br><br>　　　**Plaintiffs,**<br><br>　　　　v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>　　　**Defendant.** | Civil Action No. 15-844 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Cameroon and Agnes Whiteru are the parents, and Cameroon is the personal representative, of the estate of Okiemute Whiteru, who died from injuries sustained at a Metro station here in Washington. Of particular significance is that Okiemute (first names are used for clarity and manifest no disrespect) took several days to die after falling off a parapet wall across from the train platform into an area not visible to the public while drunk late one night. It is Plaintiffs' theory that Defendant Washington Metropolitan Area Transit Authority personnel should have discovered him during routine inspections in time to render aid. With trial set for this November, the Court addresses three of Plaintiffs' Motions *in Limine*: to preclude a defense argument on contributory negligence, to preclude the same in regard to assumption of the risk, and for a jury instruction on failure to produce evidence.

**I.   Legal Standard**

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" Graves v. Dist. of Columbia., 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting Williams v. Johnson, 747 F. Supp. 2d 10, 18 (D.D.C.

1

2010)).  They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'"  Id. at 10 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)).  The court has "broad discretion in rendering evidentiary rulings, . . . which extends . . . to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial."  Barnes v. Dist. of Columbia, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

**II.     Analysis**

The Court analyzes the three Motions in turn.

A.     Contributory Negligence

Plaintiffs first ask that the Court prevent Defendant from arguing to the jury that they are barred from recovery because of Okiemute's contributory negligence in being drunk and falling from the parapet.  See ECF No. 45 (MIL on Contrib. Neg.) at 1.  Their position is that, "in light of the special duties imposed upon common carriers, Mr. Whiteru's negligence, if any, is irrelevant to the disposition of the case."  Id.  In reversing then-Judge Ketanji Brown Jackson's ruling awarding summary judgment to WMATA on its contributory-negligence theory, our Court of Appeals did indeed agree with Plaintiffs that "there is a special relationship between a common carrier and passenger that gives rise to the common carrier's duty to take reasonable steps to render aid to a passenger if it knows or has reason to know that they are injured, regardless of whether the passenger contributed to their own injury."  Whiteru v. WMATA, 25 F.4th 1053, 1057 (D.C. Cir. 2022).  This precluded summary judgment since there were "genuine factual disputes regarding whether WMATA breached its duty to aid Mr. Whiteru after he negligently injured himself."  Id.

Yet such a holding does not necessarily prohibit Defendant from asserting a contributory-negligence defense at trial.  Instead, it simply means that if the jury finds that WMATA did have a duty to inspect all parts of the station and thus should have known that Okiemute lay injured, contributory negligence will not prevent recovery.  On the other hand, if Plaintiff alternatively asserts some lesser, non-common-carrier duty, the jury could find that Okiemute was contributorily negligent and caused his own death.  In the latter instance, a defense verdict would be warranted.

The Court will thus deny this first Motion.

B.     Assumption of the Risk

In the next round, Plaintiffs ask the Court to preclude WMATA from relying on an assumption-of-the-risk defense.  See ECF No. 46 (MIL on Ass. of Risk) at 1.  "Assumption of risk, like contributory negligence, is an affirmative defense in negligence cases and may operate as a complete bar to liability."  Dennis v. Jones, 928 A.2d 672, 676 (D.C. 2007) (citation omitted).  To rely on such a defense, the defendant must introduce evidence that "the plaintiff . . . subjectively kn[e]w of the existence of the risk and appreciate[d] its unreasonable character." Sinai v. Polinger Co., 498 A.2d 520, 524 (D.C. 1985) (citing Restatement (Second) of Torts, § 496D (1965)); see also Scoggins v. Jude, 419 A.2d 999, 1004 (D.C. 1980) (citations omitted) (defense available "when a plaintiff voluntarily has incurred a known risk").

Although its position bears superficial appeal, WMATA misapprehends what Plaintiffs are actually claiming.  It argues that by climbing on to the parapet, the decedent assumed the risk that he would fall and be injured.  See ECF No. 53 (Def. Opp. on Ass. of Risk) at 6 ("Whiteru made the voluntary decision to sit on the parapet wall, and the danger of sitting on the wall was obvious."); id. at 4 ("Only a jury can conclude if Whiteru knew or should of [sic] known of the

risk he encountered when he chose to sit on the parapet wall prior to his fall.") (citation omitted). But this is not the issue. Plaintiffs are not seeking damages for injuries that Okiemute sustained in the fall itself; instead, they want relief for the injuries he incurred after the fall when he was left unattended and ultimately died. See, e.g., MIL on Ass. of Risk at 3; ECF No. 62 (Reply on Ass. of Risk) at 1 ("Plaintiffs make no claim for the injuries Mr. Whiteru suffered from his initial fall. It is the fall's aftermath that matters.").

As a result, the proper question is not whether Okiemute assumed the risk that he would be injured when he mounted the wall; it is whether he assumed the risk that, if he fell, WMATA personnel would not inspect the full station and find him in time to render aid. Given that Defendant mischaracterizes Plaintiffs' argument, it is not surprising that WMATA never maintains that Okiemute made that latter decision voluntarily. Nor could it, given that there is no evidence that the decedent had or should have had any idea of what Metro's station-inspection policies and practices were. He thus could not have voluntarily incurred such risk. See Bradley v. NCAA, 249 F. Supp. 3d 149, 181 (D.D.C. 2017) (distinguishing other assumption-of-risk cases where plaintiff there was not suing about initial head injury sustained playing college sports, but rather university's failure to take precautions to protect her from the "additional and compounded effects suffered" thereafter).

Plaintiffs win this round.

C. Failure to Produce Evidence

Their last Motion essentially seeks a missing-evidence instruction relating to surveillance video of the Judiciary Square station in the hours after the decedent's fall, which would potentially show whether and to what extent the station manager conducted the required inspections. More specifically, Plaintiffs contend that "because defendant . . . failed to produce

4

relevant surveillance video evidence of the [station,] the jury may infer that such evidence would have been unfavorable to WMATA." ECF No. 49 (MIL on Missing Video) at 1. They request that the Court so instruct the jury.

"The missing evidence rule provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." Huthnance v. Dist. of Columbia, 722 F.3d 371, 378 (D.C. Cir. 2013) (internal quotation marks and citation omitted). Courts must nevertheless be chary in giving the instruction because "there is the danger that the instruction permitting an adverse inference may add a fictitious weight to one side or another of the case." Id. at 379 (internal quotation marks and citation omitted). The instruction "is appropriate if it is peculiarly within the power of one party to produce the evidence and the evidence would elucidate a disputed transaction." United States v. West, 393 F.3d 1302, 1309 (D.C. Cir. 2005), abrogated on other grounds by Burgess v. United States, 553 U.S. 124 (2008).

There is little dispute regarding the second prong, meaning that video of the Judiciary Square station in the hours and possibly days after Okiemute's fall would likely show the scope of inspections that the station manager took, which could be relevant to WMATA's breach of a potential duty to render aid to members of the public at the station. The harder issue to resolve is the first prong and specifically whether or not the video was peculiarly within WMATA's power to produce.

Defendant first points out that, in its regular course of business, the station security videos are overwritten every 30 days. See ECF No. 52 (Def. Opp. on Missing Video) at 2. In addition, Plaintiffs never requested that WMATA preserve any video until almost one year after the incident. Id. at 3. The question therefore boils down to whether or not Defendant had a duty

5

in the 30 days following Okiemute's fall to save the video. The law in such a scenario requires Plaintiffs to show, in addition to the evidence's relevance, that "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; [and] (2) the destruction or loss of the evidence was accompanied by a culpable state of mind." Bolger v. Dist. of Columbia, 608 F. Supp. 2d 10, 30 (D.D.C. 2009) (internal quotation marks and citations omitted).

As to the first question, such obligation "can arise when a party should have known that the evidence might be relevant to future litigation." Martin v. Omni Hotels Mgmt. Corp., 206 F. Supp. 3d 115, 129–30 (D.D.C. 2016) (internal quotation marks and citation omitted). WMATA explains that detectives from the Metro Transit Police Department, in connection with their post-incident investigation, did secure some video of the incident — namely, "44 minutes of footage of Whiteru's movements in the Metro station, him stumbling down the escalator, lying on the ground, sitting on top of the parapet wall and then falling over." Def. Opp. on Missing Video at 2. Plaintiffs, not surprisingly, argue that this was insufficient and that video in the ensuing hours and days should also have been safeguarded.

Although such a position is not unreasonable, the Court finds that the scales tip slightly to the defense here. In an investigation of a patron's death, it makes sense that MTPD would focus on that person's actions and what happened from his entry into the station until the particular unfortunate incident. And that is precisely what MTPD did here. Plaintiffs nowhere suggest that an autopsy or other information made clear to WMATA before the 30-day overwriting occurred that the decedent did not die for several days or that further station inspections would have revealed that in time to stave off death. It would concededly be more

thorough had MTPD preserved video extending through the discovery of his body, but the Court cannot conclude that it should have known of the relevance of that portion of the tapes.

In Martin, for example, Judge Rudolph Contreras of this district rejected a request for a missing-evidence inference in a similar factual scenario. In a slip-and-fall case, the plaintiff argued that the defendant hotel should have preserved a greater portion of the video, which would have shown when the mat on which the plaintiff slipped had been placed in the lobby and by whom, all of which was relevant to the hotel's notice of the purportedly dangerous condition. Martin, 206 F. Supp. 3d at 130. Judge Contreras held that the plaintiff "has supplied no evidence showing that Omni knew or should have known that the far earlier footage might be relevant to future litigation." Id. While the Court cannot go that far here, it still believes that WMATA should not necessarily have known that the other video would be relevant. Given this conclusion, the Court need not address the second question about culpable state of mind, though it does note that Judge Contreras in Martin found none. Id. at 131 (no culpable state of mind because no "bad faith or negligent destruction of evidence").

Finally, the Court is cognizant of the admonitions from the D.C. Circuit that the missing-evidence rule "is more a product of common sense than of the common law" and that, "[a]t bottom, the question is whether an adverse inference is natural and reasonable." Huthnance, 722 F.3d at 379 (internal quotation marks and citations omitted). "If not, then it does not matter that the doctrine's prerequisites are otherwise satisfied." Id. (citation omitted).

Following these precepts, the Court believes that a missing-evidence instruction is unwarranted, thus requiring a denial of the Motion.

**III.      Conclusion**

For the reasons stated above, the Court will grant Plaintiffs' Motion *in Limine* regarding assumption of the risk and deny it as to their Motions *in Limine* on contributory negligence and missing evidence.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 23, 2022