## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAMEROON WHITERU, Individually
and as Personal Representative of the
Estate of Okiemute C. Whiteru, *et ux.*,

      Plaintiffs,

      v.                                                                Civil Action No. 15-844 (JEB)

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

      Defendant.

## <u>MEMORANDUM OPINION</u>

After entering the Judiciary Square metro station one night in a highly intoxicated state,

Okiemute Whiteru fell backwards over the parapet wall that runs along the edge of the platform.

Landing in a trough behind the wall, he sustained severe injuries and ultimately died.  His

parents filed this suit against Defendant Washington Metropolitan Area Transit Authority,

alleging that WMATA breached its common-carrier duty to aid by failing to discover Whiteru

and provide him with medical assistance in the time before his death.  With trial approaching,

WMATA files a new Motion for Summary Judgment, arguing that Whiteru was a trespasser

while behind the parapet wall to whom WMATA owed no duty to aid.  Defendant also contends

that Whiteru's trespasser status means that Plaintiffs' claims are barred by his contributory

negligence.  Although this case raises interesting and difficult issues in the law of torts, the Court

agrees on both counts and will thus grant the Motion.

I.      **Background**

     A.  Factual Background

     The D.C. Circuit has recently described in detail the unfortunate facts in this case, viewed

at this summary-judgment stage in the light most favorable to Plaintiffs.  See Whiteru v.

WMATA, 25 F.4th 1053, 1055 (D.C. Cir. 2022).  The Court here offers a brief recap.

     In the morning hours of October 19, 2013, Whiteru stumbled into the Judiciary Square

station here in Washington while extremely intoxicated.  Id.  At around 1:15 a.m., surveillance

footage shows him on the station platform adjacent to the parapet wall, which is about three feet

high and runs along the rear of the platform.  Id. at 1056.  While drunkenly attempting to lean or

sit on the parapet wall, Whiteru fell backwards over the wall and landed in a trough that houses

lighting and electrical equipment.  Id.  As the trough sits at least four feet below the platform, his

fall was at least seven feet.  His body was discovered four days later.  Id.

     A Metro station manager was supposed to perform routine inspections of the platform

three times on the morning of the 19th subsequent to Whiteru's fall, including one at 1:30 a.m.

Id.  The parties dispute whether she actually conducted those inspections and whether the

inspections included a duty to look behind the parapet wall into the trough.  Id.  Although no one

knows precisely when he died, both sides agree that Whiteru would have survived had he been

discovered at 1:30 a.m.  Id.

     B.  Procedural History

     Decedent's parents, on behalf of themselves and the Whiteru Estate, sued WMATA in

D.C. Superior Court on May 1, 2015.  Id.  They alleged in relevant part that Defendant was

negligent under District of Columbia tort law for failing to aid Whiteru while he lay behind the

parapet.  Id.  The case was removed to federal district court the next month.  Id.  Then-Judge

Ketanji Brown Jackson denied WMATA's first Motion for Summary Judgment but granted its second, holding that under District of Columbia law Whiteru was contributorily negligent as a matter of law and thus barred from recovery.  Whiteru v. WMATA, 480 F. Supp. 3d 185, 188 (D.D.C. 2020).

The Circuit reversed.  It held that under D.C. law, contributory negligence does not bar claims against common carriers for failure to aid.  See Whiteru, 25 F.4th at 1058–60.  Assuming that Whiteru was a passenger (as WMATA had not yet argued otherwise), the Circuit concluded that a triable issue of fact existed regarding whether WMATA had breached its duty to aid him. Id. at 1060.  It accordingly remanded for further proceedings.

Justice Jackson having departed the drab confines of district court for greener pastures, the matter was assigned to this Court.  See April 6, 2022, Docket Entry.  Although trial is now set for next month, the Court granted WMATA leave to file a supplemental Motion for Summary Judgment.  See ECF No. 103 (Order Granting Leave).  That Motion argued for the first time, with new authority and new counsel, that Whiteru cannot recover because he became a trespasser when he entered the trough area.  See ECF No. 105 (Def. MSJ).  The Motion is now ripe.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S.

3

372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion" by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.

R. Civ. P. 56(c)(1)(B).

    "Because this is a diversity case, the substantive tort law of the District of Columbia

controls."  Smith v. Wash. Sheraton Corp., 135 F.3d 779, 782 (D.C. Cir. 1998) (citing Joy v. Bell

Helicopter Textron, Inc., 999 F.2d 549, 553 (D.C. Cir. 1993)).  In applying District law, this

Court is "required to predict what the District of Columbia's highest court would conclude if

presented with this question."  325–343 E. 56th Street Corp. v. Mobil Oil Corp., 906 F. Supp.

669, 676 (D.D.C. 1995) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).  When making such

a prediction, "in the absence of explicit guidance from the state court, a court must attempt to

predict the applicable state law, not create or modify it."  Osinubepi-Alao v. Plainview Fin.

Servs., Ltd., 44 F. Supp. 3d 84, 92 (D.D.C. 2014) (quoting Am. Waste & Pollution Control Co.

v. Browning–Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991)) (formatting modified).

## III.    Analysis

    This case turns on a close and nuanced question: was Whiteru a passenger or a trespasser

during his time behind the parapet?  Answering that question first determines the applicable duty

of care.  If Whiteru was a passenger, WMATA had a duty to aid him if it knew or should have

known of his injury; if he was a trespasser, Defendant had no such duty.  The answer also

separately resolves whether contributory negligence bars recovery.  If Whiteru was a passenger,

Plaintiffs may still recover notwithstanding his negligence under an exception to D.C.'s

contributory-negligence rule; if he was a trespasser, contributory negligence blocks his path.

The Court first considers Whiteru's status — passenger or trespasser — to decide the duty of care that WMATA owed him.  It holds that under District law Whiteru became a trespasser and lost his passenger status when he fell over the parapet.  As a result, WMATA owed Whiteru only the duty of care it owes to trespassers, which does not include a duty to aid. Based on the same finding that Whiteru was a trespasser and not a passenger, the Court independently also concludes that the D.C. Circuit's interpretation of the common-carrier exception does not allow for recovery given his contributory negligence.  Under both doctrines, Plaintiffs cannot escape judgment.

    A.  Duty of Care

District of Columbia law requires a plaintiff alleging negligence to show, among other things, that the defendant owed him a duty of care.  WMATA v. Ferguson, 977 A.2d 375, 377 (D.C. 2009).  In the District, two very different standards govern common carriers' duties to passengers versus trespassers.  First, common carriers like WMATA have an affirmative duty to aid injured passengers.  That duty is explained in Section 314A of the Restatement (Second) of Torts, titled "Special Relations Giving Rise to Duty to Aid or Protect," which the District has adopted:

> A common carrier is under a duty to its passengers to take reasonable action to protect them against unreasonable risk of physical harm, and to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

Restatement (Second) of Torts § 314A(1)(a)–(b) (formatting modified); see Whiteru, 25 F.4th at 1058; McKethean v. WMATA, 588 A.2d 708, 712 (D.C. 1991) (adopting § 314A).  Second, by contrast, common carriers, like all property owners, do not have an affirmative duty to aid trespassers.  Trespassers "may only recover for intentional, wanton or willful injury or

maintenance of a hidden engine of destruction." Holland v. Baltimore & O. R. Co., 431 A.2d

597, 599 (D.C. 1981) (*en banc*) (train company).  If the presence of a trespasser is known, the

landowner "must exercise ordinary care not to injure the trespasser." Copeland v. Baltimore &

O. R. Co., 416 A.2d 1, 3 (D.C. 1980) (train company).  But common carriers do not owe

trespassers, known or unknown, an affirmative duty to aid.  See also Restatement (Second) of

Torts § 314 (no affirmative duty to aid absent a special relationship).  The applicable duty of care

here thus turns on Whiteru's status — passenger or trespasser — while in the trough area.

      The Court first narrows the issues by identifying some points of agreement.  The parties

do not dispute that Whiteru was a passenger while on the station platform before his fall.  See

Def. MSJ at 7 ("The scope of Mr. Whiteru's invitation into the WMATA station as a passenger

extended to the station areas made available for passengers, e.g., the mezzanine, escalator, and

platform."); ECF No. 106 (Pl. Opp.) at 7 ("Mr. Whiteru . . . was a passenger . . . when he fell

from the platform . . . .").  They also do not dispute that the area behind the parapet wall is not

typically held open to Metro passengers, the normal divide for when a licensee becomes a

trespasser.  See Def. MSJ at 7; Pl. Opp. at 7.  Finally, they agree that the relevant injury here is

the exacerbation of the initial wounds Whiteru sustained when he fell behind the parapet wall

because Plaintiffs' cause of action here relates only to WMATA's failure to aid him while he

was in that area.  See ECF No. 108 (Def. Reply) at 4; ECF No. 62 (Pl. Reply in Support of

Motion *In Limine*) at 1 ("Plaintiffs make no claim for the injuries Mr. Whiteru suffered from his

initial fall.  It is the fall's aftermath that matters.").  The key to this controversy is thus whether

Whiteru remained a passenger while behind the parapet wall, or whether he became a trespasser

when he entered that area.

      The Court begins with Section 329 of the Restatement, which defines "trespasser" and

which the District has adopted.  See Firfer v. United States, 208 F.2d 524, 528 (D.C. Cir. 1953)

(adopting definition); M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971); Lacy v. Sutton Place

Condo. Ass'n, Inc., 684 A.2d 390, 393 (D.C. 1996).  Under Section 329, a trespasser is a person

who "enters or remains upon land in the possession of another without a privilege to do so

created by the possessor's consent or otherwise."  The Restatement then provides a critical

illustration:

> Without any negligence on his part A, standing on the platform of a
> subway station of the X Company, slips and falls onto the tracks.
> While there he is run over by the train of X Company, and injured.
> A is a trespasser, and the liability to him is determined by the rules
> stated in §§ 333 and 336, notwithstanding the accidental character
> of his intrusion.

Restatement (Second) of Torts § 329, cmt. c, illus. 1.

That illustration essentially describes this case.  Like "A," Whiteru entered the metro

station as a passenger.  Like "A," Whiteru slipped and fell into an area to which passengers were

not invited, thereby rendering him a trespasser.  Like "A," Whiteru was injured there.  As in the

illustration, then, the rules stated in Sections 333 and 336 — for known and unknown trespassers

— determine the duty that WMATA owed to Whiteru.  Neither of those duties of care includes

an affirmative duty to aid.  Id. §§ 333, 336.  In sum, the unusually close parallel between that

illustration and the facts of this case provides strong evidence that when Whiteru entered the

trough area he became a trespasser; while there, WMATA owed him only the duty of care it

owes to trespassers, which does not include a duty to aid.  Id. §§ 314, 333, 336.

The District of Columbia Court of Appeals agrees that there is a distinct line between

passengers and non-passengers.  That court has made clear that the common-carrier duty of care

attaches "only in a carrier-passenger relationship" — and accordingly that "[a] common carrier

has no special duty to non-passengers."  McKethean, 588 A.2d at 712; accord Afanasieva v.

WMATA, No. 21-1881, 2022 WL 621398, at *8 (D.D.C. Mar. 3, 2022) (WMATA owes common-carrier duty "only to passengers").  The Restatement also highlights this point: in a comment on the Section 314A duty, it emphasizes that "[t]he rules stated in this Section apply only where the relation exists between the parties," adding, importantly, that "[a] carrier is under no duty to one who has left the vehicle and ceased to be a passenger."  Restatement § 314A, cmt. c.  Swap in "platform" for "vehicle" and that sentence is this case.  Whiteru "left the [platform] and ceased to be a passenger" when he entered the trespass area behind the parapet wall.  He accordingly terminated the carrier-passenger relationship, just as the Restatement contemplates.

The Court notes that the federal courts in this district that have considered similar issues have shared this view of District of Columbia law.  Most recently, in Hines v. WMATA, No. 21-679, 2022 WL 392306 (D.D.C. Feb. 9, 2022), Judge Dabney Friedrich held that a passenger who was killed after wandering onto the train tracks "became a trespasser once she entered the tracks."  Id. at *5.  She cited two prior federal district courts that had also so held.  Id.  In the first, Coulston v. WMATA, No. 19-2060, 2020 WL 1236563 (D.D.C. Mar. 13, 2020), a mentally ill passenger was killed after lying on the train tracks.  Judge Timothy Kelly held there that he "became a trespasser when he left the station platform and climbed down onto the tracks."  Id. at *2.  And in the second, Whitaker v. WMATA, 1984 U.S. Dist. LEXIS 16712 (D.D.C. May 14, 1984), where a passenger was killed while in a subway tunnel, Judge June Green held that he was a trespasser when he entered the tunnel, "a place where the public was not invited and in fact, was expressly prohibited from entering."  Id. at *10.  Although these were duty-to-protect rather than duty-to-aid cases, that does not make a difference: the courts analyzed WMATA's duty of care under the trespass standard, not the common-carrier standard, and so necessarily held that passengers who enter off-limits areas become trespassers.  See Hines, 2022 WL

392306, at *5–6; <u>Coulston</u>, 2020 WL 1236563, at *2–3; <u>Whitaker</u>, 1984 U.S. Dist. LEXIS 16712, at *10–14.  Consistent with this authority and with its own view of District law, the Court holds that Whiteru became a trespasser when he left the station platform and fell into the trough area.

      Plaintiffs' counterarguments gain some purchase but do not alter the Court's conclusion. First and foremost, they rely on an illustration to Restatement § 314A, which they contend shows that common carriers do have a duty to aid former passengers like Whiteru:

> A, a passenger on the train of B Railroad, negligently falls off of the train, and is injured. The train crew discover that he has fallen off, but do nothing to send aid to him, or to notify others to do so. A lies unconscious by the side of the track in a cold rain for several hours, as a result of which his original injuries are seriously aggravated. B Railroad is subject to liability to A for the aggravation of his injuries.

§ 314A cmt. d, illus. 1.  Plaintiffs argue that this illustration shows that a common carrier's duty to aid its passengers continues even when a passenger negligently falls into an area in which he is not permitted.  <u>See</u> Pl. Opp. at 7 ("[Whiteru] did not lose his status as a passenger to whom WMATA owed that duty [to aid] because he fell backwards, behind the parapet wall, any more than the passenger in the Restatement's illustration lost his status as a passenger when he fell off the train to the side of the tracks.").

      Plaintiffs make a fair point.  This illustration sits in some tension with the Restatement § 329 illustration discussed above: in that illustration the passenger-turned-trespasser could not recover, while in the § 314A one, a fairly similarly situated plaintiff could.  The Court nonetheless concludes that the § 329 illustration more directly controls this case.  First, § 329 is squarely aimed at the line between trespasser and passenger; by contrast, § 314A focuses instead on the nature of the duties a common carrier owes its passengers <u>when those duties apply</u>.  The § 314A illustration does not mention anything about whether the passenger was a trespasser in

9

the area in which he landed.  That makes sense, as the short illustration is simply not focused on (and so does not consider) the issue of potential trespass.  The other illustrations to § 314A make that clear, as they all deal with circumstances where there is no question that the special relationship continues to exist.  <u>See</u> Restatement § 314A cmt. d, illus. 2–7.  Put another way, § 329 more directly concerns <u>whether</u> passenger or trespass duties apply, while § 314A more directly concerns <u>what</u> the passenger duty that attaches under those circumstances consists of — that is, a duty to aid.  While § 314A does suggest recovery for a passenger who became a trespasser, § 329 even more strongly bars any recovery in such circumstances.  These dueling Restatement provisions make this a hard call, but the Court nonetheless finds § 329's illustration more probative here.

Second, a closer look at the case on which the § 314A illustration was based shows that it did not in fact concern the question of trespass.  The illustration derives from a 1906 case from the Mississippi Supreme Court, <u>Yazoo & M.V.R. Co. v. Byrd</u>, 42 So. 286 (Miss. 1906).  That case in large part turned on whether the defendant railroad company had negligently overcrowded its cars such that passengers had to stand on areas outside the cars.  <u>See, e.g.</u>, <u>id.</u> at 287 ("Appellant cannot overcrowd its cars with passengers, making it impossible to obtain seats in safe places, and excuse itself from liability by saying a passenger under these circumstances was riding in a dangerous place.").  Indeed, the Mississippi Supreme Court ten years later glossed <u>Yazoo</u> as focused principally on the existence of any "negligence on the part of the railroad company."  <u>Boyd v. Alabama & V. R. Co.</u>, 71 So. 655, 655 (Miss. 1916).  The <u>Boyd</u> court elaborated that the court's holding in <u>Yazoo</u> had been that, "<u>if there was negligence in the operation of the train</u>, it was the duty of the railroad company to carry Byrd to a place where he could receive proper treatment."  <u>Id.</u> (emphasis added); <u>see also id.</u> (adding that, in <u>Yazoo</u>, "there

was evidence showing that the train was overcrowded and the passenger, for this reason, was forced to ride on the platform" — while, by contrast, "[i]n the present case the evidence excludes any theory of negligence on the part of the railroad company"). The Mississippi court thus did not even consider an argument that the passenger became a trespasser, and nothing suggests the issue was ever raised there. The § 314A illustration accordingly holds less direct relevance for assessing whether and when a passenger becomes a trespasser.

Plaintiffs also suggest that the D.C. Circuit understood WMATA to have a duty to aid Whiteru while he was behind the parapet. See Pl. Opp. at 5; Whiteru, 25 F.4th at 1059 ("[T]here is no dispute that, had" the station manager "discovered Whiteru in his incapacitated state, she would have had a duty to render some form of assistance.") (quoting Whiteru, 258 F. Supp. 3d at 192 n.11). But the trespasser issue was not raised or briefed to the Circuit. Perhaps benefiting from new counsel, Defendants flagged it, with leave of this Court, only in July 2022 — five months after the Circuit's opinion. See ECF No. 100 (Motion for Leave to File Supplemental MSJ). When the Circuit was writing, there was no dispute on that point. But there is now. The Court of Appeals' holding thus does not advance Plaintiffs' argument here.

At the end of the day, both sides take reasonable positions, but courts must ultimately decide cases. Here, this Court concludes that when Whiteru entered the trough area, he became a trespasser — through no fault of his own — and that WMATA accordingly owed him only the lesser duties it owes to trespassers, which do not include a duty to aid.

B.  Contributory Negligence

Although it is an equally close question, the Court will grant Defendant's Motion for a second, independent reason as well: even had WMATA breached a duty to Whiteru as a trespasser, such status means that his contributory negligence would still bar recovery.

The basic law is not in dispute.  Even where a plaintiff can establish a defendant's negligence, "[t]he District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense to the defendant's liability for negligence."  Jarrett v. Woodward Bros., Inc., 751 A.2d 972, 985 (D.C. 2000); accord Whiteru, 25 F.4th at 1057.  The District's strict contributory-negligence rule means that "the plaintiff is barred from recovery if his negligence was a substantial factor in causing his injury, even if the defendant was also negligent, as long as the plaintiff's negligence contributed in some degree to his injury."  Sinai v. Polinger Co., 498 A.2d 520, 528 (D.C. 1985) (internal quotation marks omitted).

The District of Columbia Court of Appeals has recognized one exception to this rule, known as the "last clear chance" exception.  District of Columbia v. Huysman, 650 A.2d 1323, 1326 (D.C. 1994); see also Whiteru, 480 F. Supp. 3d at 197 ("[A]s far as this Court can tell, the D.C. Court of Appeals has identified only one exception to the application of contributory negligence doctrine to bar liability: the last clear chance doctrine . . . .").  Both sides agree that this exception does not apply here.  See 480 F. Supp. 3d at 197.

Earlier this year, in this very case, however, the D.C. Circuit identified a second, narrow exception in District of Columbia tort law.  Whiteru, 25 F.4th at 1059.  That exception allows recovery for contributorily negligent common-carrier passengers who bring failure-to-aid claims. Id. (identifying last-clear-chance exception and adding that "[c]ommon carrier liability pursuant to Section 314A of the Restatement is another such exception").  And this is the exception at issue in this remand.

The Court concludes that the Circuit's exception does not apply here.  To begin, the exception is necessarily limited only to passengers on common carriers.  That is because

WMATA had not there argued that Whiteru was a trespasser, and so the Circuit necessarily assumed that he was a passenger.  Whiteru, 25 F.4th at 1059.  That court did not consider the question of whether contributory negligence would apply if Whiteru instead were a trespasser.

Plaintiffs thus need this Court to extend the Circuit's exception to cover trespassers on common-carrier property.  It cannot do so.  Neither Plaintiffs nor the Circuit cites any District of Columbia Court of Appeals caselaw suggesting that the District's high court recognizes a common-carrier exception to its contributory-negligence rule, much less one so broad as to reach non-passengers.  Indeed, a body of caselaw suggests the contrary — i.e., that under D.C. law, contributory negligence does in fact bar recovery for negligent passengers on common carriers. See WMATA v. Cross, 849 A.2d 1021, 1024 (D.C. 2004) (holding contributory negligence, if proven, would bar bus passenger from recovering for fall if she stood while the bus was in motion); Fells v. WMATA, 357 A.2d 395, 396 (D.C. 1976) (holding bus passenger's contributory negligence barred recovery as matter of law); see also D.C. Standard Civil Jury Instruction No. 8-11 (instructing that contributory negligence bars negligent passenger from recovering against common carrier).

The Circuit reasoned that those cases did not concern a common carrier's "duty to render aid after the passenger's fall," Whiteru, 25 F.4th at 1059, but it did not cite any District of Columbia caselaw holding that duty-to-aid claims are subject to different contributory-negligence rules from other claims.  Even accepting the Circuit's common-carrier exception for passengers, as it must, this Court certainly sees no basis to suggest that a common-carrier exception vitiates contributory negligence when the plaintiff is a trespasser.  After all, it is well established under District of Columbia law that "[a] common carrier has no special duty to non-passengers."  McKethean, 588 A.2d at 712.  Declining to extend the Circuit's holding, the Court

concludes that ordinary District contributory-negligence rules apply to suits between trespassers and common carriers.

Contributory negligence thus bars recovery here.  As the Court explained above, Whiteru was a trespasser and not a passenger during his time below the parapet.  In a prior opinion in this case, then-Judge Jackson held that Whiteru was negligent as a matter of law, a holding undisturbed by the Circuit.  Whiteru, 480 F. Supp. 3d at 192–95.  Under the District's general contributory-negligence rule, then, Plaintiffs are out of luck.  See Cross, 849 A.2d at 1024.

The Court's holding in no way minimizes the fact that Whiteru's death was a tragedy. Under District of Columbia law, however, Whiteru became a trespasser when he entered the area behind the parapet wall, thereby entitling WMATA to judgment here.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 14, 2022